UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| THE EXTRADITION OF ) | Criminal Complaint |
| ) | No. 1:18-MJ-317 |
| HAMID CHEKAKRI ) | **UNDER SEAL** |

COMPLAINT FOR PROVISIONAL ARREST
WITH A VIEW TOWARDS EXTRADITION
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.  In this matter, I represent the United States in fulfilling its treaty obligation to Canada.

2.  There is an extradition treaty in force between the United States and Canada, signed December 3, 1971, and which entered into force on March 22, 1976. The treaty was amended by a Protocol signed on January 11, 1988, which entered into force on November 26, 1991, and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, which entered into force on April 30, 2003 (collectively referenced hereafter as the "Treaty").

3.  The Treaty provides in Article 11 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4.  In accordance with Article 11 of the Treaty, the Government of Canada has asked the United States for the provisional arrest of Hamid Chekakri ("CHEKAKRI"), with a view towards his extradition.

5.  According to the information provided by the Government of Canada, CHEKAKRI was charged with a total of eighteen (18) criminal charges, including the following: five counts of

administering a stupefying or overpowering drug with intent to commit an indictable offense, in violation of section 246 of the Criminal Code of Canada (the "CCC"); five counts of aggravated assault, in violation of section 268 of the CCC; five counts of robbery, in violation of subsection (1) of section 344 of the CCC; and three counts of breaking and entering a dwelling place with the intent to commit an indictable offense, in violation of subsection (1) of section 348 of the CCC.

6. These offenses were committed within the jurisdiction of Canada. A Warrant of Arrest was sworn on March 29, 2018 before Hon. Myriam Lachance, Judge of the Superior Court, in the City of Montreal, Province of Quebec. The warrant was issued on the basis of the information sworn by Sergeant Isabelle Moreau, Service de police de la Ville de Montreal ("SPVM").

7. The warrant was issued on the basis of the following facts:

<u>Counts 1, 2, 3, and 4</u>

    a. On or about December 12, 2017, CHEKAKRI telephoned a 72 year-old woman ("Victim-1"), who resides alone, and who had listed her residence in the City of Montreal for sale. Later that day, he arrived at the residence, with a bottle of wine and box of chocolates.

    b. At the end of the visit, and purportedly to celebrate the sale of her residence, CHEKAKRI invited Victim-1 to eat a chocolate, which he had brought, but she refused. CHEKAKRI then put a chocolate into Victim-1's mouth.

    c. Approximately 15 minutes later, Victim-1 started feeling dizzy and lost consciousness. She awoke in her bed approximately 15 hours later, still wearing the clothes she wore when CHEKAKRI visited. Victim-1 felt ill, and was taken to the

hospital, where the police were contacted.

d. When Victim-1 returned to her residence, she discovered that a sum of money, jewelry, a cellular telephone, two computers and a stamp collection were missing. Victim-1 provided the telephone number from which CHEKAKRI had telephoned her, and which the Montreal Police later tied to CHEKAKRI.

e. On or about February 3, 2018, the SVPM showed Victim-1 an eight-photo array, which included a photograph taken from CHEKAKRI's official passport. Victim-1 positively identified CHEKAKRI as the man who had visited her residence and gave her the chocolate.

Counts 5, 6, 7, 8, 9, 10 and 11

f. On or about December 18, 2017, CHEKAKRI approached a 67-year-old woman ("Victim-3") outside the residence where she lives with her 76-year-old husband ("Victim-4"). He stated that he was there to visit the residence of a neighbour, which was for sale. He returned later with a bottle of wine and box of chocolates.

g. Victim-3 allowed CHEKAKRI to enter their home to view the residence, and she and Victim-4 both ate chocolates that CHEKAKRI had brought.

h. Victim-3 lost consciousness and awoke on December 20, 2017 at 8:00 a.m., completely dressed, on her bed atop the sheets. She had bruises on her head and lips. Her husband (Victim-4) was unconscious on the floor.

i. Victim-3 contacted the police, and she and Victim-4 were taken to the hospital. A urine sample taken from Victim-3 tested positive for Clonazepam, a prescription anti-depressant, which can cause loss of consciousness.

j.  Victim-3 and Victim-4 reported that a jewel box, jewelry, personal documents and a sum of money were missing from their residence. Victim-3 provided a physical description, which matches the appearance of CHEKAKRI.

k.  The SVPM obtained video surveillance at a number of locations near the residence of Victim-3 and Victim-4. CHEKAKRI was identified at several locations nearby, including footage of him using a vehicle, which is known to have been rented by CHEKAKRI using his own name, on November 22, 2017. The vehicle was located in February 2018, abandoned at a bus station in the City of Toronto.

Counts 12, 13, 14, 15, 16, 17 and 18

l.  On or about December 21, 2017, CHEKAKRI approached a 67 year-old woman ("Victim-5") outside the residence she shares with her sister, age 72 ("Victim-6"), and they had a short discussion. CHEKAKRI returned on December 22, 2017, and Victim-5 and Victim-6 allowed him into their residence.

m.  CHEKAKRI brought a bottle of wine and gift bag containing chocolate, which he offered to the women. They both ate a piece of chocolate and lost consciousness.

n.  Victim-5 and Victim-6 awoke early on December 23, 2017, feeling confused. They discovered that money, jewelry, and a coin collection were missing, and subsequently contacted the police. Both Victim-5 and Victim-6 provided a physical description, which matches the appearance of CHEKAKRI.

o.  Urine samples collected from both Victim-5 and Victim-6 tested positive for Clonazepam.

p.  The SVPM obtained video surveillance from various locations near the residence

of Victim-5 and Victim-6. CHEKAKRI was recorded at a drugstore where he is seen purchasing chocolates and the gift bag, which was positively identified as that recovered from Victim-5 and Victim-6.

q.  On December 26, 2017, the SVPM disseminated a notice to the public regarding the attacks on Victims 1 through 6.

8. The offenses with which CHEKAKRI is charged are provided for in Article 2 of the Treaty.

9. According to records provided by the U.S. Customs Border Protection Agency, on December 28, 2018, CHEKAKRI crossed into the United States, traveled to New York, and boarded a flight to Morocco. CHEKAKRI is scheduled to enter the jurisdiction of this Court, arriving on Delta Airlines Flight number 902 on March 31, 2018, at approximately 1 p.m., arriving from Costa Rica at Atlanta Hartsfield-Jackson International Airport.

10. The Government of Canada has represented that it will submit a formal request for extradition supported by the documents specified in the Treaty, within the time required under the Treaty.

11. CHEKAKRI would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the afore-named person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Canada, and that this complaint and the warrant be placed under the seal of the Court, except as disclosure is needed for its execution, until such time as the warrant is executed.

_____
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 30th day of March, 2018, at 3o'th.

_____
JUSTIN S. ANAND
United States Magistrate Judge